UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Gentry M., | No. 24-cv-4550 (LMP/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Frank Bisignano, Commissioner of Social Security,[1] | |
| Defendant. | |

---

Plaintiff Gentry M. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 7 (Plaintiff's brief), 9 (Commissioner's brief).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Plaintiff asserts that three errors infected his proceedings: (1) the Administrative Law Judge ("ALJ") failed to properly evaluate Plaintiff's hearing testimony; (2) the ALJ failed to determine whether Plaintiff had been disabled for a closed period from roughly March 1, 2019 through May 19, 2021; and (3) the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC") was unsupported because it did not account for

---

[1] The Court substitutes this Defendant automatically pursuant to Federal Rule of Civil Procedure 25(d).

Plaintiff's use of a cane. Having carefully reviewed the record, this Court finds no error in the ALJ's evaluation of Plaintiff's subjective complaints; substantial evidence supports the conclusion that Plaintiff was not disabled for the closed period identified above; and the ALJ appropriately considered Plaintiff's use of a cane in formulating the RFC. Accordingly, the Court recommends that judgment be granted for the Commissioner.

## BACKGROUND

On April 13, 2023, Plaintiff applied for DIB[2] alleging that he had been disabled since March 1, 2019. (Tr.[3] at 10, 167-68.) The Social Security Administration ("SSA") denied his claim initially (Tr. at 91-95), and upon reconsideration (Tr. at 97-100). Plaintiff then timely requested a hearing before an ALJ. (Tr. at 105-06.) The ALJ held a hearing on August 21, 2024. (Tr. at 34-64.) Counsel represented Plaintiff at the hearing, and Plaintiff testified on his own behalf. (Tr. at 40-57.) A vocational expert also testified at the hearing, answering questions posed both by the ALJ and Plaintiff's attorney. (Tr. at 57-63.)

On September 4, 2024, the SSA sent Plaintiff notice of its unfavorable decision. (Tr. at 7-9 (notice), 10-20 (decision).) The ALJ found that Plaintiff suffered from a number of severe impairments, including arthritis of the knees with bilateral knee replacements;

---

[2] In his brief, Plaintiff asserts that he filed concurrent applications for DIB as well as Supplemental Security Income ("SSI"). (Doc. 7 at 4.) However, Plaintiff cites only to the ALJ's decision for this proposition, and that decision makes clear that Plaintiff only filed for DIB benefits. (Tr. at 10.) On this Court's independent review, there appears to be no evidence that Plaintiff made application for SSI benefits. Regardless, the Court's analysis and conclusions would be the same as to SSI benefits.

[3] The Commissioner filed the consecutively paginated transcript of the administrative record on February 14, 2025. (Doc. 5.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the document rather than the exhibit number.

arthritis of the right hip; degenerative disc disease of the lumbar spine; chronic pain syndrome; and left plantar fasciitis. (Tr. at 12-13.) The ALJ also considered Plaintiff's other impairments, including vitreous degeneration of his eyes, myopia, and a lipoma of the right shoulder, but determined these were not severe because they were either adequately treated or did not cause more than a minimal limitation in the ability to perform work. (Tr. at 13.)

Despite Plaintiff's impairments, the ALJ found he was not disabled. (Tr. at 19-20.) In doing so, the ALJ determined that Plaintiff retained the RFC[4] to perform light work[5] with the following additional limitations: standing and/or walking only 4 hours in an 8-hour day; no crawling or climbing ladders, ropes or scaffolds; only occasional balancing, stooping, kneeling, crouching, and climbing ramps and stairs; only occasional exposure to extreme cold, wetness, and vibration; and no exposure to unprotected heights and dangerous moving machinery. (Tr. at 14.) The ALJ credited the testimony of the vocational expert that with these limitations, Plaintiff could still perform jobs in the national economy, including as a storage facility rental clerk (Dictionary of Occupational Titles ("DOT") No. 295.367-026), mail clerk (DOT No. 209.687-026), and parking lot attendant (DOT No. 915.473-010). (Tr. at 19, 59.)

---

[4] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[5] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council, but the Appeals Council denied his request for review on October 23, 2024 (Tr. at 1-6), making the ALJ's determination the final decision of the Commissioner. Plaintiff then filed this lawsuit seeking judicial review of the SSA's decision.

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 404.1520(a)(4) for evaluating DIB claims.[6] Rather, he asserts the ALJ committed reversible errors by failing to properly evaluate Plaintiff's testimony as elicited at the administrative hearing, and by failing to consider whether Plaintiff qualified for benefits for a 12-month or longer time starting from March 1, 2019 through May 19, 2021. Finally, Plaintiff asserts that the ALJ crafted an unsupported RFC because it did not account for his use of a cane to ambulate.

## DISCUSSION

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir.

---

[6] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* §§ 404.1520(a)(4)(ii). At step three, an ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* §§ 404.1520(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* §§ 404.1520(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v).

4

2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to decide whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). If substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ uses the wrong legal standard or incorrectly applies the law, those may be reversible legal errors. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022). "In other words, there are two standards a court uses: whether the ALJ followed applicable federal regulations (a legal error challenge requiring a legal error review), and whether substantial evidence supports the ALJ's conclusions (a substantial evidence challenge requiring a substantial evidence review)." *Branson A. L. v. Kijakazi*, No. 23-cv-15 (MJD/DLM), 2023 WL 9111437, at *5 (D. Minn. Nov. 7, 2023), *R. & R. adopted*, 2024 WL 69945 (D. Minn. Jan. 5, 2024).

**I.   THE ALJ PROPERLY EVALUATED PLAINTIFF'S HEARING TESTIMONY.**

Plaintiff first asserts that the ALJ committed error in evaluating and ultimately discounting his testimony about the intensity, persistence, and limiting effects of his symptoms. He concedes that the ALJ summarized the governing law, but asserts the ALJ's decision did little to actually evaluate Plaintiff's complaints by reference to those legal principle and instead was a "conclusory statement" that Plaintiff was overstating his limitations. (Doc. 7. at 12-17.) For his part, the Commissioner contends that the ALJ need not mechanistically recite and analyze every morsel contained in the record so long as the RFC based on substantial evidence. (Doc. 9 at 8-13 (citing SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996).)

In a sense, the Commissioner is right—an ALJ must, of course, consider all relevant evidence in determining a person's RFC. But that does not end matters. Part of that responsibility includes the ALJ's distinct obligation to consider a Plaintiff's subjective claims of limiting symptoms according to factors sometimes referred to as the "*Polaski* factors." *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (requiring ALJ to consider (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of the plaintiff's pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the plaintiff's functional restrictions). This aligns with the requirements set forth by the SSA in SSR 16-3p. *See* SSR 16-3p, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25, 2017) (discussing the factors an ALJ must use to evaluate the intensity, persistence, and limiting effects of an individual's symptoms). To the extent

that the Commissioner is suggesting that an ALJ satisfies their obligation to consider the accuracy of a person's subjective complaints by merely crafting an RFC supported by substantial evidence, that is wrong. After all, the substantial-evidence test assumes a proper *evaluation* of record evidence—a determination of what evidence should be credited and what should be disregarded—before relying on that evidence to determine a person's RFC.

Of course, it is just as true that an ALJ need not "explicitly discuss each *Polaski* factor." *Strongson v. Barhnart*, 361 F.3d 1066, 1072 (8th Cir. 2004). But they must, at the least, "acknowledge[] and consider[] those factors before discounting a claimant's subjective complaints." *Id.*; *see also Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) ("This court has long required an ALJ to consider the [*Polaski*] factors when evaluating a claimant's credibility[.]"). And if the ALJ discredits a claimant's testimony, and give a good reason for doing so, courts will generally defer to that ALJ's credibility findings. *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).

In his brief, Plaintiff identifies the many physical ailments he testified about at his hearing: his back, hip and knee pain have forced him to have multiple surgeries that include a patella fracture repair, an ACL repair, an MCL repair, discectomy, and a total right hip arthroplasty; he is likely to be facing a left hip replacement soon, as well as a back fusion surgery; and he is essentially immobile until his medication takes effect each day. (Tr. at 43-48.) Plaintiff also testified that he uses a knee brace and a cane, and that he applies ice to his knees until they are completely numb each day. (Tr. at 49-53.) The ALJ recognized these complaints, as well as others to which Plaintiff testified: his inability to drive long distances; his inability to squat or kneel; his inability to get comfortable; locking of knee

joints; the difficulty in concentrating that was caused by Plaintiff's constant pain; and the fact that he was confined to his house—sometimes his bed—once or twice a week due to pain. (Tr. at 15-16.)

Plaintiff is correct that the ALJ found that his statements about "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 16.) But Plaintiff is incorrect that the ALJ did not adequately explain his reasoning. Specifically, the ALJ noted that Plaintiff's evidence was reviewed by two state agency medical consultants, both of whom opined that Plaintiff's limitations were less severe than Plaintiff's own description. (Tr. at 16; *see also* Tr. at 65-72, 74-80 (state agency disability determinations).) Next, the ALJ detailed at length Plaintiff's ailments and medical interventions, noting Plaintiff's ongoing improvements since the onset date (at least until a fall in 2022). (Tr. at 16-17.) More precisely, Plaintiff testified that by 2021 he was experiencing debilitating pain that had progressed so severely that he "absolutely" could not leave the house (Tr. at 57), but treatment notes from that time frame suggest otherwise. During a January 20, 2021 doctor visit, Plaintiff reported doing well, not using a cane, and having "immensely better" pain levels post-hip surgery. (Tr. at 657.) Treatment notes from May of 2021 also indicate Plaintiff was self-reporting that his pain control was improving and that he was no longer using a cane for ambulation. (Tr. at 601.) The ALJ referred to such notes (Tr. at 17), leading the Court to conclude that he was relying on such medical evidence to determine that Plaintiff's complaints were overstated

8

Plaintiff criticizes the ALJ's evaluation as superficial. But the Court's role on review is not to nitpick what could have been clearer or more thorough in an ALJ's decision; it is to ask whether the ALJ followed the governing law and reached a decision that can be reasonably harmonized with itself and the evidence. *See Lane v. O'Malley*, No. 23-1432, 2024 WL 302395, at *1 (8th Cir. Jan. 26, 2024) (per curiam) ("We decline to nitpick [the ALJ's] well-reasoned decision.") (citing *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)); *Rachel H. v. Kijakazi*, No. 22-cv-1634 (JRT/DLM), 2023 WL 4374165, at *5 (D. Minn. June 12, 2023) ("The Eighth Circuit instructs lower courts to 'harmonize statements where possible,' and to avoid nitpicking when reviewing ALJ determinations.") (quoting *Tasha W. v. Berryhill*, 17-cv-4933 (KMM), 2019 WL 1170666, at *3 (D. Minn. Mar. 13, 2019)), *R. & R. adopted*, 2023 WL 4373922 (D. Minn. July 6, 2023). The ALJ's evaluation comported with SSR 16-3p and was supported by substantial evidence, leaving no room for reversal on this basis.[7]

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE DETERMINATION THAT PLAINTIFF DID NOT QUALIFY AS DISABLED FOR A CLOSED 12-MONTH PERIOD FROM MARCH, 2019 THROUGH MAY, 2021.

Plaintiff asserts that even if he were not entitled to benefits during the entire period beginning on his March 1, 2019 onset date, there is a "clearly defined closed period of

---

[7] While not dispositive, the Court also pauses to note that the ALJ did not blindly rely on the state agency opinions in determining Plaintiff's limitations. Rather, the ALJ imposed greater RFC restrictions based on his independent review of the overall record, "including taking into account the claimant's subjective statements." (Tr. at 16.) This lends further credence to the notion that the ALJ's review of evidence was thorough as it related to Plaintiff's subjective complaints.

disability from March 1, 2019 through May 19, 2021" during which Plaintiff was disabled. (Doc. 7 at 23.) Plaintiff alleges that during this timeframe, he needed to use a cane and would have excessive absences that the ALJ did not account for, and that these hindrances would make him unable to work. (*Id.*)

A disability determination "is not an 'all or nothing' proposition; a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time." *Harris v. Sec'y of Dep't of Health & Human Servs.*, 959 F.2d 723, 724 (8th Cir. 1992). A grant of closed-period benefits requires evidence that the claimant is unable to engage in substantial gainful activity for at least 12 continuous months. 42 U.S.C. § 423(d)(1)(A); *see also Devary v. Colvin*, 5 F. Supp. 3d 1023, 1032 (N.D. Iowa 2014).

On substantial-evidence review, the Court finds no error in the ALJ's failure to grant closed-period benefits. Treatment notes from March of 2019 indicate that Plaintiff, then post-surgery for left knee replacement, was "nearly back to normal" and not taking pain medication. (Tr. at 761-62.) During a May 21, 2019 checkup, Plaintiff noted knee and hip pain, but some improvement. (Tr. at 756-57.) While Plaintiff's knee and hip pain appears to have worsened as time went on, during a December 3, 2019 doctor's visit he was unaccompanied and walked to the patient room without any assistive device (such as a cane). (Tr. at 749-54.) And while in May of 2020 Plaintiff used a cane "for all mobility" (Tr. at 734), by December of 2020 he was not using a cane to get around (Tr. at 668-69). Taken together, these notes suggest that Plaintiff certainly has suffered significant mobility issues through the disability period, but that the ALJ's description of those problems "waxing and waning" (Tr. at 16) was apt, at least as to the closed period Plaintiff identifies.

10

Because substantial evidence supports the conclusion that Plaintiff was not disabled for a continuous, 12-month period between March 1, 2019 and May 19, 2021, the Court finds no error in the denial of benefits for this term.

### III. THE ALJ PROPERLY EVALUATED PLAINTIFF'S USE OF A CANE IN FORMULATING HIS RFC.

The Court finally addresses Plaintiff's assertion that the ALJ erred in formulating the RFC because he did not consider whether Plaintiff needed to use a cane to ambulate. (Doc. 7 at 17-22.) The Commissioner, for his part, asserts that it was Plaintiff's burden to demonstrate that the use of a cane was medically necessary, and that in any event the ALJ's analysis indicates that he fully considered Plaintiff's cane use in formulating the RFC. (Doc. 9 at 13-19.)

It is Plaintiff's burden to establish that her RFC should have included greater limitations than imposed by an ALJ. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The question before the Court is whether a reasonable mind could accept that no such limitations are necessary on this record, as the ALJ found. *Biestek*, 587 U.S. at 102-03. In considering this question, the Court does not substitute its own judgment for that of the ALJ by reweighing the evidence; instead, it must consider evidence that supports and detracts from the ALJ's decision and affirm the ALJ's decision where "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

An ALJ is required to consider a claimant's use of a cane in formulating the RFC where there is evidence such use is medically required. SSR 96-9p, 1996 WL 374185, at *6-*7 (S.S.A. July 2, 1996). A cane will be deemed medically required where there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *Id.*, 1996 WL 374185, at *7.

After a careful review of the record, the Court cannot agree with Plaintiff that the RFC formulation did not properly consider Plaintiff's use of a cane. It is true, as Plaintiff notes, that after a period of improvement and ambulation without a cane, he returned to cane use after a fall in February of 2022. (Tr. at 1045.) It is also true that this cane use continued for some time. (*See, e.g.,* Tr. at 1043 (March, 2, 2202 treatment note indicating use of single-point cane).) But the ALJ noted as much in his decision. (*See* Tr. at 17.) And as time went on, treatment notes make no mention of cane use. (*See, e.g.,* Tr. at 1032-33 (October 7, 2022 consult for orthotics); Tr. at 1031 (January 5, 2023 fitment for orthotics, noting Plaintiff's gait); Tr. at 493 & 1021 (September 15, 2023 visit noting Plaintiff's antalgic gait without mention of cane use; also noting ability to transition from seated to standing without assistance); Tr. at 1009-10 (November 7, 2023 visit with no indication of cane use).) This aligns with Plaintiff's own testimony at his hearing before the ALJ. Plaintiff endorsed using a cane, but when asked by his attorney, "is using the cane a daily thing?" Plaintiff answered, "No sir." (Tr. at 53.)

Given this record, the Court cannot fault the ALJ for failing to find Plaintiff's cane use medically necessary. Rather, substantial evidence supports the ALJ's conclusion that

Plaintiff's cane use was periodic and often episodic. To the extent that Plaintiff's cane use signaled physical impairments, the RFC reflected as much through its postural and exertional limitations. As such, the Court finds no error in the ALJ's refusal to single out Plaintiff's use of a cane in the RFC in a more fulsome manner than was done.

## RECOMMENDATION

Based on the above, as well as the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Plaintiff's request for judgment on the administrative record (Doc. 7) be **DENIED**; and

2. Defendant's request for judgment on the administrative record (Doc. 9) be **GRANTED**.

DATED:  January 9, 2026                   *s/Douglas L. Micko*
                                          DOUGLAS L. MICKO
                                          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).